**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **MICHAEL DEERING,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 4:05CV2274MLM** |
| | ) | |
| **STATE FARM MUTUAL AUTOMOBILE** | ) | |
| **INSURANCE COMPANY,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION

This matter is before the court pursuant to the Motion for Summary Judgment filed by Defendant State Farm Mutual Automobile Insurance Company ("Defendant"). Doc. 13. Plaintiff filed a Response. Doc. 17. Defendant filed a Reply. Doc. 18. The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). Doc. 8.

## UNDISPUTED FACTS[1]

Defendant issued two automobile insurance policies to Plaintiff and Leann Deering. One policy, #10 1503-E16-25A, was issued to Plaintiff and Leann Deering on a 1999 Pontiac Sunfire (the "Pontiac Sunfire policy"). The second policy, # 625 5705-E01-25C, was issued to Plaintiff and Leann Deering on a 2001 Chrysler 300M (the "Chrysler policy"). Both policies included underinsured motorist coverage and used identical language to define the scope of that coverage.

On or about June 5, 2003, Plaintiff was involved in an automobile collision while traveling in the Chrysler. As a result of the collision he suffered serious physical injuries. Subsequently, Plaintiff filed suit and settled a claim against the alleged tortfeasor for $25,000. After settling with the

---

[1] The facts are undisputed unless otherwise stated.

tortfeasor, Plaintiff made a claim with Defendant for the underinsured motorist coverage applicable

to the Chrysler under the terms of the Chrysler policy. Plaintiff and Defendant settled this claim for

underinsured coverage for the underinsured coverage limit of $100,000.

Plaintiff alleges in his Complaint that he is entitled to the underinsured motorist coverage

provided under the Pontiac Sunfire policy. Defendant contends that Plaintiff is not entitled to

coverage under the Pontiac Sunfire policy's underinsured motorist provision for the above described

collision. Both the Chrysler and the Pontiac Sunfire policies provide, in relevant part, as follows:

Limits of Liability

Coverage W

1. The amount of coverage is shown on the declarations page under "Limits of Liability – W – Each Person, Each Accident". Under "Each Person" is the amount of coverage for all damages, including damages for care and loss of services, arising out of and due to bodily injury to one person. "Bodily injury to one person" includes all injury and damages to others arising out of and resulting from this bodily injury, and all emotional distress arising out of and resulting from this bodily injury sustained by other persons who do not sustain bodily injury. Under "Each Accident" is the total amount of coverage, subject to the amount shown under "Each Person", for all such damages arising out of and due to bodily injury to two or more persons in the same accident.

...

3. Any payment made to a person under this coverage shall reduce any amount payable to that person under the bodily injury liability coverage.

4. The limits of liability are not increased because:
a. more than one vehicle is insured under this policy;
b. more than one person is insured at the time of the accident; or
c. more than one underinsured motor vehicle is involved in the same accident.

5. The most we pay will be the lesser of:

a. the difference between the amount of the insured's damages for bodily injury, and the amount paid to the insured by or for any person or organization who is or may be held legally liable for the bodily injury; or
b. the limits of liability of this coverage.

Both policies further state:

THERE IS NO COVERAGE UNDER COVERAGE W FOR BODILY INJURY TO AN INSURED:

1. WHILE OCCUPYING A MOTOR VEHICLE OWNED OR LEASED BY YOU, YOUR SPOUSE OR ANY RELATIVE IF IT IS NOT INSURED FOR THIS COVERAGE UNDER THIS POLICY.[2]

## STANDARD FOR SUMMARY JUDGMENT

The Court may grant a motion for summary judgment if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The substantive law determines which facts are critical and which are irrelevant. Only disputes over facts that might affect the outcome will properly preclude summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Summary judgment is not proper if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Id. See also Fenny v. Dakota, Minn. & E.R.R. Co., 327 F.3d 707, 711 (8th Cir. 2003) (holding that an issue is genuine "if the evidence is sufficient to allow a reasonable jury to return a verdict for the non-moving party").

A moving party always bears the burden of informing the court of the basis of its motion. Celotex, 477 U.S. at 323. Once the moving party discharges this burden, the nonmoving party must set forth specific facts demonstrating that there is a dispute as to a genuine issue of material fact, not the "mere existence of some alleged factual dispute." Fed. R. Civ. P. 56(e); Anderson, 477 U.S. at 247. The nonmoving party may not rest upon mere allegations or denials of his pleading. Anderson, 477 U.S. at 256.

---

[2]     The court shall refer to this clause as the "owned but not insured" language of the policies.

In passing on a motion for summary judgment, the court must view the facts in the light most favorable to the nonmoving party and all justifiable inferences are to be drawn in its favor. Id. at 255; Raschick v. Prudent Supply, Inc., 830 F.2d 1497, 1499 (8th Cir. 1987). The court's function is not to weigh the evidence, but to determine whether there is a genuine issue for trial. Anderson, 477 U.S. at 249. However, "[t]he mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient." Id. at 252.

## LEGAL FRAMEWORK APPLICABLE TO INTERPRETATION OF INSURANCE POLICIES

1.      State law controls the rules of construction of insurance contracts. St. Paul Fire and Marine Ins. Co. v. Missouri United School Ins. Council, 98 F.3d 343, 345 (8th Cir.1996); Childers v. State Farm Fire & Cas. Co., 799 S.W.2d 138, 140 (Mo. Ct. App. 1990). "The interpretation of an insurance policy is a question of law." Hartford Ins. Co. of the Midwest v. Wyllie, 396 F. Supp.2d 1033, 1039 (E.D. Mo. 2005) (citing McCormack Baron Mgmt. Servs., Inc. v. Am. Guar. & Liab. Ins. Co., 989 S.W.2d 168, 171 (Mo. 1999)).

2.      "When interpreting the language of an insurance policy, [Missouri courts] give the language its plain meaning." Ware v. GEICO Gen. Ins. Co, 84 S.W.3d 99, 102 (Mo. Ct. App. 2002) (citing Lang v. Nationwide Mut. Fire Ins. Co., 970 S.W.2d 828, 830 (Mo. Ct. App. 1998)). Plain meaning is defined as what "a reasonable layperson in the position of the insured" would have thought the words of the policy meant. Id. (citing Goza v. Hartford Underwriters Ins. Co., 972 S.W.2d 371, 374 (Mo. Ct. App. 1998); Niswonger v. Farm Bureau Town & Country Ins. Co. of Missouri, 992 S.W.2d 308, 316 (Mo. Ct. App. 1999)). See also Wyllie, 396 F. Supp.2d at 1038.

3.      "The rule in Missouri is that [insurance] policy provisions 'designed to cut down, restrict, or limit insurance already granted, or introducing exceptions or exemptions, must be strictly construed against the insurer.'" Bituminous Cas. Corp. v. Walsh & Wells, Inc., 170 S.W.2d 117, 121 (Mo. Ct.

App.1943). In <u>Missouri Employers Mutual Insurance Co. v. Nichols</u>, 149 S.W.3d 617, 625 (Mo. Ct. App. 2004), the court set forth the following principals applicable to interpretation of insurance contracts under Missouri law:

> In interpreting an insurance contract, we are to read the contract as a whole and determine the intent of the parties, giving effect to that intent by enforcing the contract as written. <u>Id.</u> In doing so, we are to give the language used in the insurance contract its plain and ordinary meaning. <u>Id.</u> If, giving the language used its plain and ordinary meaning, the intent of the parties is clear and unambiguous, we cannot resort to rules of construction to interpret the contract. <u>Id.</u> The mere fact that the parties disagree over the interpretation of the terms of a contract does not create an ambiguity. <u>Id.</u> An ambiguity arises where there is a duplicity, indistinctness, or uncertainty in the meaning of the words used in an insurance contract. <u>Id.</u> If a term is specifically defined in an insurance policy, courts will normally look to that definition and nowhere else to determine its meaning. <u>Id.</u> at 663. However, in order for the contract definition to necessarily control, the definition itself must be reasonably clear and unambiguous. <u>Id.</u> Otherwise, an appellate court is free to give a reasonable construction to the term, applying general contract principles and resolving doubts in favor of the insured. <u>Id.</u>

<u>See</u> <u>also</u> <u>Oak River Ins. Co. v. Truitt</u>, 390 F.3d 554, 557 (8th Cir. 2004) (holding that an insurance policy should be read as a whole to determine the parties' intent) (citing <u>Kyte v. Am. Family Mut. Ins. Co.</u>, 92 S.W.3d 295, 298-99 (Mo. Ct. App. 2002); <u>Stotts v. Progressive Classic Ins.</u>, 118 S.W.3d 655, 662 (Mo. Ct. App.2003)); <u>TNT Speed & Sport Center, Inc. v. American States Ins. Co.</u>, 114 F.3d 731, 732 (8th Cir. 1997) ("'If the language of an insurance contract is clear and unambiguous, the court does not have the power to rewrite for the parties and must construe the contract as written.'") (quoting <u>Shaffner v. Farmers Mutual Fire Ins. Co.</u>, 859 S.W.2d 902, 906 (Mo. Ct. App. 1993)).

Where an insurance policy is ambiguous it should be construed against the insurance company. <u>See</u> <u>Oak River</u>, 390 F.3d at 557. The court in <u>Oak River</u> further explained that ambiguity in an insurance policy arises when its language "is reasonably open to different constructions." <u>Id.</u> at 558 (citing <u>Lincoln County Ambulance v. Pac. Employers Ins.</u>, 15 S.W.3d 739, 743 (Mo. Ct.

App.1998); Stotts, 118 S.W.3d at 662. "Whether an insurance policy is ambiguous is a question of law." Ware, 84 S.W.2d at 102 (citing Niswonger, 992 S.W.2d at 316).

4.      "Where the language of an insurance policy is unambiguous, it should be enforced as written." State Farm Mut. Auto. Ins. Co. v. Shahan, 141 F.3d 819, 823 (8th Cir. 1998) (citing Peters v. Employers Mut. Cas. Co., 853 S.W.2d 300, 302 (Mo.1993) (en banc)). "The language should be accorded its plain meaning. This is true even where the language appears within the restrictive provisions of a policy." Id. (citing Eaton v. State Farm Mut. Auto. Ins. Co., 849 S.W.2d 189, 193-94 (Mo. Ct. App.1993)).

5.      "Under Missouri law the plaintiff has the burden of showing that the loss and damages are covered by the policy; the defendant insurer has the burden of demonstrating the applicability of any exclusions on which it relies." American States Ins. Co. v. Mathis, 974 S.W.2d 647, 649 (Mo. Ct. App. 1998) (citing Taylor-Morley-Simon, Inc. v. Michigan Mut. Ins. Co., 645 F. Supp. 596, 599 (E.D. Mo.1986)).

**DISCUSSION**

Plaintiff alleges in the matter under consideration that he is entitled recover damages pursuant to the underinsured motorist coverage in Pontiac Sunfire policy. Defendant contends that the plain and unambiguous language of the underinsured motorist coverage in this policy does not provide for coverage where an insured is injured while in a vehicle not covered by the specific policy. As Plaintiff was injured while traveling in the Chrysler and not the Pontiac Sunfire, Defendant asserts that Plaintiff is not entitled to recover under the Pontiac Sunfire policy. Defendant also alleges that Plaintiff seeks to "stack" the underinsured motorist coverage in the Chrysler and the Pontiac Sunfire policies and that these insurance policies prohibit "stacking" of underinsured motorist coverage. Plaintiff contends that the Pontiac Sunfire and the Chrysler policies are ambiguous with respect to the limits of liability

6

of their underinsured motorist provisions; that the policies are ambiguous because they do not use the term "stacking"; that to allow Defendant to bar stacking would, as a matter of public policy, deny Plaintiff his reasonable expectation of coverage; and that the interplay between the "owned but not insured," the "If there is Other Underinsured Motor Vehicle Coverage," and the "Limits of Liability" provisions of the policies creates ambiguity.

The court must construe the language of the insurance policies at issue according to its plain meaning. See Ware, 84 S.W.3d at 102. If the intent of the parties is clear pursuant to the plain meaning of the policies the court need not resort to rules of construction to determine whether Plaintiff is entitled to underinsured motorist coverage under the Pontiac Sunfire policy. See TNT, 114 F.3d at 732; Missouri Employers, 149 S.W.3d at 625. The "owned but not insured" language of the Pontiac Sunfire policy clearly and unambiguously excludes coverage for injuries which an insured suffers while not occupying the Pontiac Sunfire even though the insured is an owner of the Pontiac Sunfire. Plaintiff suffered injuries while traveling in the Chrysler, not the Pontiac Sunfire. Thus, according to the plain meaning of the Pontiac Sunfire policy, injuries suffered by Plaintiff while traveling in the Chrysler are not covered by the Pontiac Sunfire policy.[3] Because the "owned but not insured" language is unambiguous, despite the fact that it appears within restrictive language, it

---

[3]     Plaintiff cites Clark v. American Family Insurance Co., 92 S.W.3d 198 (Mo. Ct. App. 2002), in support of his position that the insurance policies in the matter under consideration are ambiguous and that, therefore, they should be construed in favor of the insured, Plaintiff. Clark is not on point to the matter under consideration as the language in Clark which the court found ambiguous addressed the "Limits of Liability" provision and not an "owned but not insured clause" which precluded stacking. Id. at 765. Additionally, it is "not certain that the Missouri Supreme Court would have ruled the same way as the appellate court [did in Clark] on the specific facts of Clark." Murray v. American Family Mut. Ins. Co., 429 F.3d 757, 766 (8th Cir. 2005). Moreover, as noted by the court in Murray, where the meaning of an insurance policy is clear, the court need not consider whether provisions create ambiguity. Id. ("[W]e need not determine whether an insurance policy is ambiguous based solely on the two provisions contrasted in Clark because the Murrays' policies contain an additional provision that clarifies American Family's total liability.").

should be enforced as written. See Shahan, 141 F.3d at 823. To assign meaning to the "owned but not insured" language which differs from its plain and ordinary meaning, would have the court create ambiguity where none exists. See id; Rodriguez v. General Accident Ins. Co. of America, 808 S.W.2d 379, 382 (Mo. 1991) ("A court is not permitted to create an ambiguity in order to distort the language of an unambiguous policy, or, in order to enforce a particular construction which it might feel is more appropriate.").

The insurance policies at issue include four scenarios addressing circumstances where there "Is Other Underinsured Motorist Coverage." The first scenario addresses a situation where the insured is injured while a pedestrian. The second scenario addresses a situation where the insured is injured while occupying his or her car and where that car is insured by an additional policy providing for underinsured motorist coverage. The third scenario addresses a situation where the insured sustains bodily injury while occupying a vehicle which he or she does not own. The fourth scenario addresses a situation where there is other underinsured coverage on a newly acquired vehicle. Def. Ex. 1 at 14. As Plaintiff was not a pedestrian while injured, as Plaintiff is not seeking underinsured motorist coverage under a second policy insuring the Chrysler, as Plaintiff suffered injury while he was occupying a car which he co-owned, and as the Chrysler was not a newly acquired vehicle, the plain and unambiguous language of all four of these scenarios does not address the scenario under which Plaintiff suffered bodily injury. Thus, contrary to Plaintiff's assertion, the "Other Underinsured Motorist" provision is not relevant to a determination of Defendant's liability in the matter under consideration. Moreover, while an insurance policy should be read as a whole to determine the parties' intent, the court finds that the plain and unambiguous meaning of these four scenarios when read in the context of the policy does not alter the plain and unambiguous "owned

but not insured" language of the policies. See Oak River, 390 F.3d at 557; Missouri Employers Mutual Insurance Co., 149 S.W.3d at 625.

Plaintiff also argues that ambiguity is created by the Limits of Liability provision applicable to the underinsured motorist provisions of the insurance policies at issue. The Limits of Liability provision of both the Chrysler and the Pontiac Sunfire policies, as quoted above, limits underinsured coverage to the lesser of the difference between: (1) an insured's damages and the amount paid to him by another and (2) the limits of liability of the underinsured coverage. This language is not inconsistent with the anti-stacking provisions of the Chrysler and Pontiac Sunfire policies nor is it ambiguous. While an insurance policy should be read as a whole to determine the parties' intent, the court finds that the plain and unambiguous meaning of the Limits of Liability provision when read in the context of the policy does not alter the plain and unambiguous "owned but not insured" provision of the policy. See Oak River, 390 F.3d at 557; Missouri Employers Mutual Insurance Co., 149 S.W.3d at 625. Moreover, this court cannot assign meaning to the Limits of Liability provision which differs from its plain and ordinary meaning. See Shahan, 141 F.3d at 823; Rodriguez, 808 S.W.2d at 38.

Plaintiff alleges that the provisions of the policies which preclude Plaintiff from being compensated pursuant to the underinsured motorist coverage in the Pontiac Sunfire policy while permitting coverage under the Chrysler policy are anti-stacking provisions which violate public policy. Although Missouri has a "clear public policy interest in ensuring that all motor vehicles carry liability coverage," as evidenced by Missouri statutes requiring that a liability policy be carried on motor vehicles, Missouri does not require underinsured motorist coverage "nor is such coverage mandated by Missouri public policy." Shahan, 141 F.3d at 822 (citing Mo. Rev. Stat. § 303.190). As such the provisions of the policies at issue which preclude stacking of underinsured motorist coverage do not

violate public policy of Missouri.  <u>See</u> <u>id.</u> (holding that exclusionary language applicable to underinsured motorist coverage does not violate Missouri public policy).

Plaintiff alleges also that the absence of the term "stacking" in the applicable insurance policies creates ambiguity.  Plaintiff, however, has not cited authority in support of this position nor has the court's research revealed Missouri case law requiring an insurance policy which precludes stacking to use the word "stacking" to be effective.

Because  the plain and unambiguous meaning of the Pontiac Sunfire policy does not provide underinsured motorist coverage for the collision in which Plaintiff was involved while traveling in the Chrysler the court finds that Defendant's Motion for Summary judgment should be granted.

## CONCLUSION

For the reasons set forth above, the court finds that Plaintiff is not entitled to underinsured motorist benefits under the Pontiac Sunfire policy and that summary judgment should be granted in favor of Defendant.

Accordingly,

**IT IS HEREBY ORDERED** that the Motion for Summary Judgment filed by Defendant State Farm Mutual Automobile Insurance Company is **GRANTED**; Doc. 13

**IT IS FURTHER ORDERED** that a separate Judgment shall issue this same date incorporating this Memorandum Opinion.

/s/Mary Ann L. Medler
MARY ANN L. MEDLER
UNITED STATES MAGISTRATE JUDGE


Dated this <u>2nd</u>  day of  October, 2006.